Thank you, Your Honor, and may it please the Court, I'm Richard Bress, representing the American Beverage Association et al. I'd like to reserve seven minutes, if I may, for rebuttal. Obesity and related conditions are serious health problems. The causes and best means of prevention are hotly disputed. The City is entitled to have and to share its view. The drinking beverages with added sugar contributes to these conditions more so than consuming equivalent calories from other foods and beverages. The FDA and we are entitled to believe otherwise. What the City can't do, consistent with the First Amendment, is force us to convey its controversial view. Yet that's exactly what the City is doing here with this warning by singling out advertisements for beverages with added sugar. Counsel, can I stop you there and ask a question before you go for it? Because for me it's pretty fundamental. At page 20 of the Order of Appeal, the District Court wrote that there's no real, quote, no real dispute as to the literal accuracy of the required warning. Is that right? That's not correct, Your Honor, and we've never... There wasn't that concession? Absolutely never was that concession, Your Honor. If the warning said, can among other causes contribute to, would there be any doubt about the literal accuracy of the warning? Your Honor, yes, there would be doubt about the literal accuracy of the warning because what it would be saying is that, well, let me put it differently, it can, if it only... It would be literally accurate, would it not? You might say other things cause more or there would be literally accurate, would there not? Your Honor, I think it would be similar to saying that it can be illegal to cross the street at the crosswalk, and the answer is yes if the light is red, no if the light is green. Well, as I rephrase it, tell me why it's not literally accurate. Can among other causes contribute to and in the list? Sure, just like any other calorie, Your Honor, consuming beverages with added sugar can be part of... We agree, we agree. Tell me, answer my question. If the warning were rephrased the way I have rephrased it, would it be literally accurate? It would be literally accurate, Your Honor. As to diabetes? It doesn't make a distinction between type 1 and type 2 diabetes. So it would be literally inaccurate for type 1 diabetes, Your Honor. So does that change your... Yes, Your Honor, because it just says diabetes and not type 2 diabetes, that's correct. We should understand your answer to that question to refer only to obesity and tooth decay? Obesity and tooth decay, Your Honor, and yes. And type 1 diabetes? Type 2. Type 2 diabetes, but of course, since it doesn't say it, it's literally inaccurate. If the warning were, if we told the city of San Francisco, well, this is not literally accurate, make it literally accurate, would it then withstand First Amendment scrutiny? No, Your Honor, it would not. And the reason it wouldn't, Your Honor, is that we don't look at just the literal accuracy of a warning. We look at what it conveys to consumers. And here, it conveys that these products, by singling out ads for sugar-sweetened beverages and warning only about drinking sugar-sweetened beverages, it inevitably sends a message to consumers that drinking these items contributes more so... But that's the only product you sell. And if it's accurate about that product, for example, let's suppose you have a dangerous ladder. I mean, the answer isn't to say, well, you know, hammers are dangerous, too. It's a question of whether the use of this product, the health warning, is accurate as to this product. And there's nothing that suggests that it's more or different, just that it is. Your Honor, I respectfully disagree. I think that consumers view or perceive what a warning, or really any statement that is made... How do we know what the consumer's view is? I mean, my intuition is quite different. My intuition is that the consumers will understand that this is a, you know, a generic public health statement that, you know, in an aggregate sense, drinking a fair amount of this can cause a problem. It doesn't save one drink and so on. But my question is, if I have one warning where you're arguing for another, are we just going to make it up? No, Your Honor, I don't believe so. I do think that there are statements, and I'll try to explain why I think this one is one of them, that are intrinsically misleading. But ultimately, it's a matter of proof. And the burden of proof to demonstrate that this is a warning that is purely factual and uncontroversial is on the city and not on the plaintiffs. I have another question about, which is maybe more theoretical. At the end of the Supreme Court's recent opinion, they carve out two things. One is factually accurate. I'm not quoting it exactly, but one is for factually accurate information and uncontroversial information about a product. But the other is a health and safety warning, which is separate. So what do we make of the fact that those two are separate? And is there a broader permission for health and safety warnings than there is for commercial product information? Your Honor, I agree that the Court phrased them in the disjunctive and did so purposefully. And I think what the Court was saying is that purely factual and uncontroversial messages about a product will be analyzed under Zouderer and likely will pass muster, depending on the case and the facts of it. It separated out health and safety warnings because I think it was saying that there are some health and safety warnings that are not susceptible to Zouderer review. Well, they may not be tied to a particular product. Exactly. And so they might be upheld under Central Hudson instead, Your Honor. I think there are many warnings, frankly, out there that you'd look at under Central Hudson and would pass Central Hudson, but it would have to be looked at there. In this case, if I may, there's two different ways in which one can understand how this sends a message that these products are different. Now, I noted, first of all, it singles them out. And it is important, Your Honor, that it singles them out because picture this example. You're walking down the aisle in a supermarket and you see a sign advertising cranberry juice, sweetened cranberry juice. It's got a big black box warning, starting with the word warning, that links that product to diabetes and obesity. Next to it is an advertisement for apple juice. It bears no such sign. There's very little doubt that the consumer walking down the aisle will get the message that the cranberry juice is worse for them in those respects than the apple juice, even though, in fact, the apple juice likely has more sugar and more total calories. How does this analysis differ from an equal protection analysis? The court seems to suggest that it's part of a First Amendment analysis. Is the state required to address all problems at once? No, Your Honor, it's not. And if I can take that in two parts, if I may. Yeah, it was two questions. Then I guess I'm on point. First of all, Your Honor, our argument here, the one I was just making, is about how consumers perceive ads. And it's just a truth of the world, given the example I just laid out tells us, that when you see an ad on one item that you view as similar or in the same category as another item, and that one bears a hostile warning linking it with dangerous health conditions, it's going to send an implication. I understand your factual argument. My question is, does that create a First Amendment problem or an equal protection problem? That creates a First Amendment problem, Your Honor, because it makes the warning itself misleading. In other words, the warning is conveying a difference between products that actually isn't accurate. Now you're getting precisely the question I wanted to ask. So your position is that when a factual, let's assume a factually accurate, warning is posted with respect to one product, a similar one must be posted with respect to all similar products? Yes, Your Honor. Again, I don't want to overgeneralize. Excuse me, because of tailoring? It's not because of tailoring, Your Honor. It's because if you fail, let me start this another way. The government ordinarily doesn't attack, with speech requirements, similar items differently. If you look at alcohol, for example, the government doesn't require on its bottles a warning about the danger of birth defects to pregnant women or the danger from driving while impaired only on wine, only on beer, or only on hard liquor. It puts it across the product category. Similarly with tobacco, Your Honor, once science progressed to the point that people understood that all the different tobacco products raised the same problems, they required the warning across the board. Were it different, were the government to only warn you that drinking hard liquor, for example, risks birth defects, then people might quite reasonably believe that wine or beer is somehow different. Well, we understand that. We understand that apple juice has a lot of sugar, too, and there isn't a warning on apple juice. But Judge Hurwitz is raising a different point, that record tells us many, many times over again that drinking sugary beverages is a sort of exponentially greater percentage of intake of sugar for many people. So why does the government have to take on all at once? I think that's really important. Your Honor, two points here. Number one is, if it doesn't take them on all at once in the First Amendment context, it risks sending a misleading message to consumers that one product is more dangerous than the other, and the government isn't allowed to force us to send misleading messages. The second point, and I'd like to address that, equal protection, if you will. Before you get to equal protection, why doesn't it always, in the First Amendment category, why isn't there also a problem with it being over or under-inclusive? There is a problem, Your Honor, and sorry, I meant, when I said equal protection, I was just moving to the second part of the First Amendment, and so I apologize. I said there wasn't a tailoring problem, but I think you've clarified now. No. The Supreme Court, in its case, raises a concern about a restriction that's wildly under-inclusive. Is that an issue in this context? It is, Your Honor, and thank you for asking it. Zouder had told us, and I'm going to answer the question, but getting there through Zouder. Zouder had initially implied that under-inclusiveness is not an issue, and in that context it wasn't, because when the government is forcing corrective speech, the fact that it's not correcting all of your misstatements doesn't really send a negative implication, and isn't under-inclusive in the way also that the court cares about. In other words, it doesn't have the dangers that the court worries about with under-inclusiveness. But come to NIFLA, and NIFLA tells us that under-inclusiveness is a problem, even with regard to compelled commercial speech, for a couple of reasons. First of all, it raises the risk that the government is shutting down certain speech because it disagrees with it, or perhaps doesn't like the underlying product or service. Secondly, it has a problem that if you're wildly under-inclusive, you may well not be materially advancing the government's interest. So, counsel, you'd be happy if the warning label were also required on fruit juice and sugared cereals? Not just fruit juice and sugared cereals, Your Honor, at all. When we're trying to figure out what we eat in a day, many of us are at least roughly considering how many calories we're eating in a day, and we're choosing different items to do it. I might skip my roll if I want to have dessert, and what have you. If you're telling people who are trying to design what they're buying and what they're consuming that certain products are going to contribute more towards obesity, diabetes, tooth decay than others... You keep saying more. I guess I have difficulty with that. It doesn't say more on the label. It just says it can contribute to these conditions. And so you've got one product that has a warning designed after tobacco warnings to make you believe that product is dangerous. I was asking a question about how far the label would have to go before you would consider it accurate. And, Your Honor, I... Or not wildly inaccurate, at least. I'm not sure wildly inaccurate is quite the standard here. I actually think it's just misleading is what we're looking at, and the FTC's standard, I think, would apply here, which is if a significant number of consumers would be misled, that's enough to make the government's message like a private message too misleading. But getting back to your point of how much is too much, I think in this case, to be accurate, you'd have to include all caloric foods and beverages. Wait a minute. You said... That's picking up a point that I wanted to raise earlier when you responded to Judge Hurwitz's initial questioning when you said, just like any other calories. Are you saying that the calories from a sugared soda are the same as the calories from, say, broccoli? Not only am I saying that the calories for purposes of obesity and diabetes type 2, Your Honor, are the same as the calories from broccoli, but the city... Excuse me. So that we should have a warning on broccoli. I'm trying to get at... Your Honor... ...wildly under-inclusive. Your Honor... And what is it then that you think has to be included if there's going to be a label on this? Your Honor, the FDA has told us, and the city has not disputed this, that calories from sugar-sweetened beverages do not contribute any more than calories from any other energy source. And so if you wanted to be accurate, what you'd really tell... Don't contribute more to what? You have to finish the sentence. Don't contribute more to what? More to obesity and diabetes, and we're talking about diabetes type 2, Your Honor, in this instance. But isn't...  These are calories that have no other nutrient attached to them, B. They are... As to the actual social context, they are consumed in much greater amounts than other things that have added sugars, and three, that the portion sizes are such that people are much more likely to over-consume them, and is the city not entitled to take those into account in making an otherwise factual statement? Let's assume it's an otherwise factual statement, or it could be made one with fairly little adjustment. Your Honor, if I can break that into pieces to answer it. First of all, what we know is that sugar-sweetened beverages count as about 4% of the overall diet. And of... About 4% of the overall diet, Your Honor, and that's actually Dr. Willett's figures from page 7 of his affidavit. What we also know from that is that actually sodas, which is really what Your Honor is implicitly referring to when you talk about relatively few nutrients, are only two-thirds of that, so about 3% of the overall diet. This warning covers, by the way, also fruit juices and all sorts of other things. A third of the category of sugar-sweetened beverages are items that do have nutrients. Getting to the larger point, I think Your Honor is saying that this warning could be read as a behavioral warning about how many people consume or over-consume this product in the course of an overall diet that is consuming more calories than it takes in. The problem there is... are three. One, the text, two, the scope, and three, their own witness's testimony, and I'll take them in turn if I may. We'll start with the text. The text doesn't say over-consumption. It simply says drinking sugar-sweetened beverages. Two, the scope. Your initial point was, even if the text were literally accurate to a fault, you still think there would be a constitutional problem. The problem again, Your Honor, is I'm addressing this notion that what this warning is doing is sending a behavioral message about how people in the real world are consuming products. So in your view, the text really doesn't matter. No. The text says FDA studies have shown with complete accuracy. You would say, yeah, but you also need to include that FDA studies have shown that about broccoli too. I'm sorry. I'm addressing a completely different point. No, but I'm saying... If I may, Your Honor, the point here is that it is the city that's arguing that this has to be viewed as a behavioral warning. That that's the message that the text is sending, and what I'm saying is that's wrong. It's not sending a behavioral warning because it's not talking about over-consumption, and it applies to items like fruit juices, for example, cranberry juice and grapefruit juice that no one thinks of as typically over-consumed. So when they see this sign on cranberry juice and on grapefruit juice, they're not thinking about over-consumption. So we fix it now. We take out cranberry juice and grapefruit juice. The problem is that what we're trying to get at is what is your core argument? Is there some way to fix this under your core argument? And I hear you saying no. That was really my question. Okay. Okay. So core argument, Your Honor, is I think what the city is, is no, but let me explain why. I think the city is trying to address a more complex problem here, which is over-consumption of calories in society, and the part, yes, the part that these products play in that overall over-consumption. Mind you, that's something industry has been trying to talk to consumers about as well. That's the thing that they're trying to address. And no, I don't think that you can address that in a constitutional way by requiring warnings on only one product, because I think inevitably you're going to be sending misleading messages by doing that. If you look at the- Excuse me, counsel, your argument would be that this, here I am- En banc is very hard for me in that respect, Your Honor. Everything would be under-inclusive. Any kind of warning would be under-inclusive. Is that your argument? I don't think so, Your Honor. I do think you could have a warning that says, for example, consuming more calories than you expend risks obesity and diabetes. Balance what you eat, drink, and do. Okay? I think you could have a warning like that, but you'd have to have it across product categories. And the problem that you'd have there is Zouderer's required connection between the warning and the product itself would no longer be there. You'd look at it under Central Hudson, and I think you'd decide under Central Hudson that narrow tailoring requires that the government give that kind of behavioral warning if that's what it's trying to do itself. The warning you just gave doesn't work for type 1 diabetes, does it? No, it does not, Your Honor. It wouldn't work for that either. Now, if we look at the- Ken, for a moment, if we look at the expert report that was tendered by the city, and it was tendered by Dr. Hammond, he is their warning expert. And what he says at paragraph 28, this is at ER 383, is that it's important to be very clear about the cause or condition that leads to the health effect. And he says here, that's accomplished by the words, drinking beverages with added sugar. And so he's- As opposed to overconsumption, Your Honor. Exactly. And so he's telling us quite clearly there that what this warning is telling us, and he says this on paragraph 29, is that drinking- what this warning tells us is that drinking beverages with added sugar leads to obesity, diabetes, and tooth decay. This is not a warning about behavior. It's an incorrect and misleading warning about a product. I want to get back to your core argument, as Judge Berzon asked. It doesn't matter in your view, does it? If it said overconsumption and was perfectly accurate, you would say you've got to put it on everything before it becomes constitutional. Isn't that your core argument? Well, we'd say two things, Your Honor. First of all, we would say that- three things. First of all, the city has pointed out that overconsumption itself, the city says, is too vague. Well, if overconsumption is too vague, of course, then- No, and I'm assuming the world's most accurate disclosure. Okay. You keep fighting- I'll go with you on that. The world's most accurate disclosure. You would say, nonetheless, this would be unconstitutional because the same accurate disclosure must be on all competing forms of food or beverage? Your Honor, I would say it for two reasons. Number one- You would say that, would you not? I would say that so long as it's within this large black box warning with the word warning. It's sending inevitably a message about these products, regardless of what it says. But secondly, I would say it's unconstitutional, if I may, because I haven't addressed this really yet, because it wouldn't meet either the material advancement or tailoring prongs of Central Hudson, or the undue burden prong of Zouderer itself. Can I get to the undue burden, because so far we've been just arguing as to the accuracy and therefore the permissibility of the statement. As I understand it, the warnings required here have to be at least 20%, and you say that that's too much, that that's an undue burden. If we were to agree with you on that, what happens to the warnings on tobacco products? Your Honor, I don't think it would affect the warnings on tobacco products. What Congress said- But they're 20%. Well, they will be when they go into effect. I agree with that, Your Honor. Those warnings, and again, I can't cite the legislative history verbatim right now, but Richard Durbin spoke about why, during the debates for that bill, you needed 20%. What he said is that cigarette warnings have been around for a long time. People have gotten essentially so used to them that they no longer jump out, no longer capture attention, and it's important to increase the size of them, the severity of them, so people notice them. In this case, there has never been a warning on a food or beverage item, on an ad for a food or beverage item that is generally recognized as safe in the history of regulation. You could easily decide in this case that a gigantic 20% warning is not necessary to catch attention in this context because of its novelty, but with cigarettes, perhaps it presents a completely different issue. There's another point, Your Honor, which is with cigarettes, it does apply across the board. It doesn't apply to just some media and not others. It applies across the board with cigarettes. That's part of the different issue. Well, to me, it's connected, Your Honor, in the following way. When we look at whether a burden is undue, we do look also at the chilling effect that it causes and what its eventual success or effectiveness is going to be. With cigarettes, because you have to have a warning regardless of where you place them and because people well understand the warning, cigarette companies do feel like, frankly, it's worth it to get their brand names out because everybody else has the same warning. They're competing in a level playing field and they might as well get their brand names out there rather than not. This case is very different, Your Honor. In this case, we've got a circumstance where the lion's share of media are not covered. The city has acknowledged that any rational advertiser will shift from media where they're required to give this sort of a warning to other media where they're not. Well, that's because it's a city that's doing the regulating, so that essentially washes cities out of regulation. In other words, the city's reason for doing that is because it really can't regulate things not happening in the city. It's the reason for doing some of it, Your Honor. Mailers and all of that, they might be able to regulate, but in Discovery Network, a very similar argument was made and rejected by the Supreme Court. The argument was made, well, we can't regulate the machines that have regular newspapers in them, just the ones that have commercial handbills because the regular ones, we can't regulate under the First Amendment. And the Supreme Court said, that may be so, but the problem is it still affects the effectiveness of what you're trying to do. And that's what we're saying here. We're not damning the city for not covering other media, but by not... Counsel. Over there, but you're down to about five and a half minutes. So I guess I want to know your position today on whether or not we have to address both prongs, the factually inaccurate and uncontroversial and the unduly burdensome, especially in light of NIFLA. What's your position today? Your Honor, no, you don't have to address both. I think if this Court finds that it's not factually accurate and uncontroversial, then it can strike the warning down under central Hudson. If it finds that it is factually accurate and uncontroversial, then it does have to move on and decide on the burden. What about in the other direction as well? As I understood her question was, what about in the other direction? What if we simply decided that it was unduly burdensome? Then that's all that this Court would need to do. I'll reserve the rest of my time for rebuttal if I may. Thank you, Counsel. Thank you. Ms. Goldman? Good morning. May it please the Court, Jeremy Goldman on behalf of San Francisco. This case does go to the heart of the government's ability to warn of health and safety risks. Governments can and do conduct public information campaigns, but their ability to require warnings on ads or labels for the products themselves is one of the most effective ways that government can warn of public health risks. The standards that plaintiffs are asking this Court to apply to how you interpret a warning, how you determine whether there is an undue burden, are standards that would invalidate many disclosures, many warnings besides the ones at issue in this case, including, ironically, the FDA's rule that will eventually require an added sugars declaration on product labels. In light of NIFLA, what is your view of the appropriate standard of review for health and safety warning, or is there none? I don't think NIFLA articulated a different standard for health and safety warnings. It affirmed the Zotero standard, and it affirmed the legality of health and safety warnings. So, in your view, a health and safety warning would be reviewed under Zotero or Central Hudson? Under Zotero. Under Zotero. But we know from NIFLA it's got to pertain to the product or service being offered. We know that much. That changes under NIFLA, right? Yes, I agree the Court said it, and of course that's not an issue here because the disclosure is about sugary beverages and it appears on ads for sugary beverages. Right, and it has to be purely factual, right? That's right. It has to be purely factual. Are we sure that Zotero applies? The Supreme Court assumed Zotero's application in NIFLA and then said it wasn't met. Did it resolve whether Zotero is the appropriate analysis with respect to warnings like this? Well, it clearly didn't consider the notices. You said these don't meet Zotero, so we don't need to figure out what the right standard is. But now our question is, with a health and safety warning, reportedly, what is the correct standard to apply? Right, and we think that with respect to determining what message a warning conveys, you start with the text. And even plaintiffs, I think, concede that people wouldn't look at the warning here and assume that everyone who drinks a sugary beverage is going to become obese and get diabetes. Well, I gather they do. I mean, they basically say, well, it depends on what else you're doing and what else you're eating and probably depends on your metabolism, so it's not accurate. That's what I understand. They're inaccurate. I mean, they have two strains of inaccuracy. One is that it reads like a universally applicable statement, which I'm not sure it does, and that's not universally applicable because it's contingent on various things. And secondly, this notion of separating out these particular products. But on the first one, I do understand them to be saying that it's inaccurate because it reads as if it applies to everyone and it doesn't. Well, if that's what, if they're saying that the warning conveys that everyone, every single person who drinks a sugary beverage will become obese and get diabetes, if that's their position, then that's so much the worse for them. That's obviously a completely unreasonable inference people see around them that people drink. But why is it? Why is it? If the Supreme Court says it has to be purely factual and your warning doesn't say can contribute, it says contributes to, why is their position unreasonable? Because a cigarette warning says causes cancer, but not every person who smokes a cigarette... Has that ever been... I agree. You actually went and looked at a... I had to look online, not being a consumer of tobacco products, but I looked online and it does say causes cancer. Has that ever been challenged? I don't think that the language of that disclosure has been... Right, and it's difficult because it gets to be kind of a perverse situation. We all know people who say the secret to living to be 100 is, you know, three scotches a day and a pack of cigarettes, but so it can be a kind of extreme. And nevertheless, your warning is challenged and your warning says without qualification that drinking these beverages contributes to. Right, and I think the word contributes is different than causes in so far as it contributes to just it's one factor, but there are other factors as well. Well, is there anything in the record that tells me that sugary beverages contributes to tooth decay if I brush my teeth every day or to obesity if I'm a long distance runner and burn up those calories? Well, I do think, yes, because there's evidence from the experts about how it works, I mean, how sugar causes tooth decay. Tension for me, and I don't mean to take up all your time, but here's the tension for me. On the one hand, getting back to Judge Berzon's point, it seems, and the district court found that anybody, a reasonable person, looking at this warning would understand it to be looking at an epidemiological, community-wide basis, and that is certainly your argument, but there is also considerable indication in the record that part of the problem with public health warnings is that the public has a low level of health literacy, and so those seem to be intent into me. Right, the FDA pointed out with respect to the added sugars declaration that people bring to the way they understand any disclosure their own beliefs, their own past exposure to information, whether grounded in science or not, and it could lead some people to interpret the added sugars declaration to mean that certain foods are less healthful than they are. But the real... But is your target audience a person in the community that has a low level of health literacy and doesn't understand? Or is your target audience, as the district court seemed to think that a reasonable person would understand that this is aimed at a community-wide assessment, that sugar on a community-wide basis can contribute to or does contribute to obesity? I think that those are different things insofar as the district court was saying that it communicates generally what happens with sugary beverage consumption at the levels in which they're packaged, marketed, and sold. My question's different, and I don't want to spend a whole lot of time on this, but who's the target audience for this? When we look to see how a reasonable person would interpret this label, who is that person? Well, there is a striking association between consumption of sugary beverages and health literacy. The people who are most likely to consume sugary beverages are the people least likely to know the health risks associated with sugary beverage consumption. So it's aimed at people who are not health literate. I just want to hear the answer to Judge Kristen's question. Who is it aimed at? The people who are not health literate? Is that what you're saying? Well, you want the warning to reach anyone who might consume soda. So this is a really simple question, and I don't hear the answer to it. Who's the reasonable person? Is this warning supposed to be aimed at someone who doesn't have good health literacy? No. The warning is certainly for everyone to read that you want people who are thinking about drinking soda or do drink soda or want to purchase soda for their kids, you want them to receive that message. But in terms of how the warning is going to be understood, we think it's going to be understood in light of typical patterns of consumption that are familiar to the people who are reading the warning. Could you address what controversial means? In the Zouder context, NIFLA says, although apparently the license notice was accurate, the Supreme Court says it's controversial because it addresses abortion, which was really the extent of their reasoning. So we know that a notice can be factual and accurate and still be controversial. So what does controversial mean in your view? In the typical case, I think uncontroversial means accurate. I think what was happening in NIFLA is something a little bit different. Because the notice there was accurate, but the court nevertheless says it was controversial because it referenced abortion. So we know it can't merely mean accurate. So what does it mean? It makes me think of what the Second Circuit said in the National Electrical Manufacturers versus Sorrell case. It said that the individual liberty interests guarded by the First Amendment, which may be impaired by personal or political speech when personal or political speech is mandated by the state, are not ordinarily implicated by compelled commercial disclosures. It seems to me that there may be two types of controversial in response to Judge Ikuda's question, and I wonder if you agree or disagree with that. One could be that there's a controversy over the accuracy of something that is a legitimate scientific controversy as opposed to, you know, fringe doubters. But the other is that the issue itself that is the subject of the warning is politically or morally difficult and a subject of public debate. Does the Supreme Court mean both of those things or only one of those things? I think it was only talking about the example before it, which was abortion, which is the second of the two things that you mentioned. And that's simply not the issue that we have in this case. The issue in this case is whether the message conveyed by the warning is itself controversial. There's not a claim that the warning, the message is completely accurate and factual, but nonetheless it somehow implicates a topic that is controversial. Can we go back to NIFLA for a second, because as I take your colleague's argument, I suspect he would resist my characterization of it, but at the end of the day, he said because it's under-inclusive, because there's a problem here. Do you agree that before NIFLA, under-inclusiveness was not part of the Zouderer analysis? I don't think that it changed. You surely must agree that the district court said, I'm not looking at under-inclusiveness here because it's not part of the Zouderer analysis. Judge Chen said so. Right. So in light of that, now that we know that under-inclusiveness is part of the analysis, shouldn't we send it back to the district court to address that issue? The reality is that sugary beverage consumption does not stand on all fours with every other food, like broccoli, because the amounts of added sugar. Well, deal with the type of juice that's not covered, not broccoli. Deal with a juice that has a high sugar content. The Supreme Court tells us we have to look at under-inclusiveness. Doesn't tell us how, doesn't tell us why, but it tells us we have to. And the district court said, I don't have to. Isn't that just enough on its face to send it back? There is no evidence that there is any other product that delivers the amount of added sugar and that people consume in the way and quantities. And that's why I asked your colleague the question about equal protection. Is this under-inclusiveness analysis a comparison of equal products, or is it just an under-inclusive warning? Really, the first is a First Amendment problem. The second is an equal protection problem. As I understand plaintiff's argument, the problem they're saying is not that the warning is not included on everything, but that by not being included on everything, it conveys a message that is misleading. So they are simply pulling in under-inclusiveness to argue that the message is misleading just because it appears on sugary beverages, but doesn't appear on everything else. And in NIFLA, the Supreme Court was concerned that the notice was in some facilities, but not in other facilities. And I know opposing counsel makes the point that the ordinance requires a notice on billboards and posters, but not on magazines, electronic media, and the like. Is that another form of under-inclusiveness of concern in light of NIFLA? No, because in NIFLA, the court made clear that by leaving out family planning clinics, there was a concern that, in fact, the state was discriminating based on the speaker's viewpoint. Because the Supreme Court expressly says we're not ruling on viewpoint discrimination in the footnote. But the court's opinion, the court's opinion did say that the exclusion of family planning clinics were originally included, and then the legislature dropped it. The court's opinion says that this raises a concern about viewpoint discrimination. But the Supreme Court declined to comment on Zauderer's application outside the facts of NIFLA. And what I hear in your argument is that you're suggesting that we return or use the reasoning in CTIA, which I realize has been vacated, but whether we follow the reasoning there. As I read CTIA, they sort of combine the facts and whether or not it's controversial altogether. But even assuming that they're separate items, are you suggesting that that's the kind of reasoning that we ought to apply in this case? Yes, that we don't see anything in NIFLA that would call into question the approach that the panel took in CTIA versus Berkeley. And I mean, there's a distinction between factual and accurate. You can have a factual statement that is false. It's a statement of fact as opposed to an opinion. A claim that there are three people sitting at that table is a statement of fact that happens to be false. Uncontroversial goes to whether it is accurate. And I think that's how the panel approached it in CTIA versus Berkeley, and I think that's the correct approach. To go back to the under-inclusiveness, as I understand the under-inclusiveness discussion in NIFLA, if that's what we're calling it, it was in the context not of Zadar, but of the first part of the analysis, not of the unlicensed notice, but of the other notice. So it wasn't with regard to Zadar, was it? I'm sorry. It doesn't appear that the under-inclusiveness discussion in NIFLA had to do with a Zadar analysis. It had to do with a central Hudson analysis that applied to the first of the notices in NIFLA. I think that it was talking about the unlicensed notice where it was. No, it wasn't. It actually wasn't. Okay. Go ahead. It said that the... That's where it said that the requirement to provide the notice was dropped from certain clinics and those that provide contraceptive services. That's my recollection of the case. To get to the factual accuracy of the notice, I don't think anyone disputes that type 1 diabetes is not affected by added sugar consumption, and yet your notice blends all of them together. Why isn't that inaccurate? Because it's hard to see that that inaccuracy matters to anyone, that it's a concern for anyone. You want to avoid any kind of diabetes. If it just said type 2, then it said, never mind because I'm only really worried about type 1. That's not a way someone is going to respond.  I want to give you, because I think it's fairly uncontroversial, that type 1 isn't caused by excess sugar consumption, and all of the data you provided talks about type 2. But, in fact, if a type 1 diabetic has low blood sugar, that person needs to get sugar, and the fastest way of delivering sugar is through either cranberry juice, apple juice, or soda. So when you have a wording that says, this contributes to diabetes, that may deter somebody from giving what could be a life-saving administration of soda. I'm just saying, it's inaccurate. And you're saying, yeah, it's inaccurate. It doesn't matter. So where does that leave us? I would hope that someone with type 1 diabetes has been educated by their doctor. But what about if somebody with type 1 diabetes gets into trouble and isn't thinking clearly? Because, of course, that's what happens. And this gets back to my question. I don't think it's a silly question at all. Our chief is asking, and it's not such an outlandish hypothetical. A type 1 diabetic gets into trouble. People around that person are trying to help. People around that person look at the label. And that's why I wanted to know, what's the literacy level that we're looking at? I think your answer is that the target audience is people who have a low level of health literacy. Isn't this a problem? I think that the problem is that that sort of goes down a path where, in order to be accurate, a warning has to eliminate any possibility of misunderstanding any circumstances. Would the city object to having it revised, for example, to say type 2 diabetes? People with diabetes generally know themselves which category they fall into. But why are you fighting that? I guess I don't understand that. It's not a problem to add type 2 to modify diabetes. That's not a problem. But I do think we need to be careful about applying a standard that is impossible for any warning to meet. I don't think that's impossible in this case, in the least, because I think if you knew more about the type 1 and type 2 diabetic community, you would know that to type 1 diabetics, the implication that their disease is caused by sugar is really a problem for them. And so you are requiring the dissemination of misleading information. And I'm not sure where that leaves us or leaves me in this case. But if your information is inaccurate, it seems to me you failed the test. It's not a problem to change the warning to say type 2 diabetes. That's not what's before us. That's not the issue that's before us. The issue before us is a preliminary injunction appeal based on your current label. Well, the issue is if it is inaccurate, how it's inaccurate. You have to concede it's inaccurate. Your position is it doesn't matter. It is inaccurate as to type 1 diabetes. And again, though, it's not a problem. If that's the court's only concern with the language of the warning, the city can fix that. My understanding is that the ordinance would allow changes without going back through the city council. Is that right? Yes, there can, through a hearing process, the director of public health can change the language. You know, this is inaccurate with respect to diabetes if we're talking about this from an analytic standpoint in the same way that the DACA warning is inaccurate. It says causes cancer. Now, I'm not a doctor or a medical researcher, but I suspect that there are some forms of cancer that are not caused by use of tobacco. So in conceptual terms, it seems to me it's inaccurate here with respect to diabetes in the same way as the tobacco warnings are. However, here it's a much simpler form of inaccuracy. There are two types of diabetes. One is caused by excessive or can be caused by excessive sugar consumption. The other one, absolutely not. What do we do with the fact that this one's a much simpler form of inaccuracy and to some degree might even be, at least in the hypothetical proposed by Judge Christin, harmful? Yeah, I agree that that's a different situation and that adding type 2 is not a difficult problem here, but I did want to address briefly the issue. Before you leave that, your expert refers us to the website by the American Diabetes Association that makes the point that type 1 is not caused by, right? But as to type 2, it says type 2 is not caused by sugar but by genetics and lifestyle factors. With the American Diabetes Association having that attribution on its page as to the cause of type 2, how do we say that any mention of diabetes is going to be uncontroversial? The warning doesn't say cause. Well, it says contributes to, and the American Diabetes Association says that type 2 is not caused by sugar. My question is why doesn't this at least create a problem with the other two parts of that or misleading or uncontroversial? The American Diabetes Association does not dispute the evidence showing that sugary beverage consumption is associated with higher risk of type 2 diabetes. It absolutely does not dispute that. And in fact, the 2015 dietary DGAC report said that there is strong evidence of this association and it isn't fully explained by body weight. So there is no dispute about that association. Can I ask a structural question about this case? Do you agree? In some ways what bothers me the most, as I said before, is that we are speculating about how somebody would understand this warning. Is there anything in the record about how people actually understand this warning and should there be? There are expert declarations. Dr. Hammond is an expert in the field. But not as to this particular warning, right? Just sort of generic statements about how people understand warnings. There is one study that looked at the impact of reading a warning on people's beverage choices, but it wasn't a survey where you asked people questions. What do you think this means? Right, that's correct. Would it be a nice thing to do that in terms of we're sitting here having a major discussion, a disagreement about how an average person would understand that and it might be discoverable? I mean... And whose burden is that? And at what stage? That's a lot of questions. Well, I don't think there's a rule and I don't think there should be a rule that before the government can require a warning, it has to conduct some kind of survey about... Maybe not in general, but at this point we have these... Whether there's an actual dispute about the factual accuracy, there is a dispute about how people would read this. We're being told diametrically opposite things. And I may have an instinct about it, I do, but it's not provable anywhere in the record. I don't think you'll get away from the problem that different people can understand it different ways. That's going to be the case, again, of any warning message. And that's why the primary inquiry has to be a textual one and that's one that courts have done. Can you address burdensomeness? You only have a few moments. Yes, thank you. And I'm looking at the exhibit and it sure looks burdensome. It takes over a lot of the advertising space. Is there any justification for the size of this other than the fact that it has been proposed to make cigarette advertising roughly the same proportion? Well, the first thing I want to say about those mock-ups is obviously they were done to make it look as obtrusive as possible. And a real ad, if they run a real ad, it's going to be probably in a bar all along the bottom. Oh, but it has to be 20 percent, it has to be rectangular, it has to be enclosed in black lines. That's true, but it will look different from the mock-ups that they presented in there. Let's assume that even in my imaginary different model, why isn't that burdensome? Because the 20 percent requirement, and I disagree with the claim that my opponent made that it has to do just with the fact that there have been tobacco warnings for a long time. Congress came to the conclusion that 20 percent, that smaller warnings are too easily overlooked. Does that apply? That's my question. You're doing it by analogy to the tobacco warnings. It's quite clear these were designed to be the same percentage as the tobacco warnings. Is there a difference? In other words, with respect to the seriousness and the immediacy and the scientific proof of the problem, can all warnings be exactly the same as the tobacco warnings simply because the tobacco warning is 20 percent of the advertising? The 20 percent size comes from research about how to effectively convey a warning. It has to do with the way people process information. It doesn't have to do with the specific product that's warned about. It just has to do with information processing. What is necessary to convey health information to the public? Where do we find this in the record, please? In Dr. Hammond's declaration. Anywhere else? I've read Dr. Hammond's declaration. Is there anything else anywhere? Well, the amicus brief by the American Cancer Society does give some of the background of the 20 percent warning in the tobacco context. What would be burdensome? Over here, stage left. What would be burdensome that this isn't? Would 50 percent be burdensome? I think the question is... Well, the question is, what would be burdensome? Would 50 percent be burdensome? The question is, what is an undue burden? And if a certain format is there because that's what's necessary to convey the information... Well, it is 50 percent for packages, and that may be because of the size of packages or people process information on packages in different ways. So I think you do want to look at what point do people notice the warning and what point do they not? Because if a warning is justified, if the government is justified in requiring warning, then the burden imposed by actually conveying that warning to people can't be an undue one. Sure, but in this context with these ads, would 50 percent be acceptable constitutionally in your view? I think that would go farther because the city has made the judgment that 20 percent is adequate. You're saying 20 percent is okay. Is 25 percent okay? 30 percent? I'm trying to get a sense of where the line is. I think the city has made a judgment that 20 percent is necessary. Given that that is its judgment, if it went beyond that, then yes, that would be too much because the city has determined that 20 percent is the amount that is necessary to convey the warning to people. So if another city were to determine 30 percent were required, that would be unreasonable? It depends on the evidence, and that's what... Same evidence. Same evidence. You don't get to change the hypothetical. The city of Oakland says, gee, we've looked at the same evidence. We think 50 percent is necessary to warn the population. Do we do... Would that be unreasonable? Yes, because the evidence... I mean, if it's the same evidence... Because San Francisco concluded to the contrary. It's not San Francisco's conclusion. It's conclusion based on the actual research that is embodied in federal standards and in international standards. They didn't make this number up. And if another jurisdiction were to simply come up with a different number, ignoring all of the evidence that San Francisco relied upon and that Judge Chen found it was reasonable to rely upon, then yes, that city would be going too far because that's not what the evidence showed. If there were new evidence, then you'd have to revisit the question. But the question is, what is necessary to convey this information effectively? And so burdensomeness... I guess I'm asking a different question. Is burdensomeness a different concept than what you believe is necessary to convey the information? I want to make clear that burdensomeness is not the question. The question is whether it's unduly burdensome. That word has to do something. Fair enough. Is unduly burdensomeness different than... In other words, it cannot be unduly burdensome, in your view,  I do think that's correct, because otherwise you'd be saying the government is justified in requiring a warning, but it cannot actually require a warning that people notice. That would accomplish nothing. So once you say the government can justifiably require a warning, it seems to me you have to accept that it's not an undue burden if the warning has to appear in a form that the message is actually conveyed to people. Not greater than is necessary to convey that information, but if there is an evidence-based determination that this is the size that is necessary to convey that information, then I do think it's not an undue burden. Thank you, Councillor. If I can start where my friend left off for a moment. The Supreme Court said the standard is no broader than reasonably necessary. There's no evidence in this case that the city actually took that approach. I mean, the city decided 20% was big enough to work for it, but there's no sense in the record that the city ever asked the question whether something smaller would work. That's the burden that they'd be under, and they've got no testimony, frankly, to that effect either. Is your primary objection to the size, or is it also to the border and the conspicuousness and so on? Your Honour, the size is certainly part of it, but the rest is part of it, too. In fact, paragraph 27 of Hammond's report, Hammond says that it uses the trigger word warning, which is commonly used for products that might result in serious injury. That's a very odd signal word to use for a product that the FDA tells us is generally recognized as safe. Secondly, the Supreme Court did look at undue burden separately, frankly, from the question of broader than reasonably necessary, because the court, in looking at the unlicensed warning, said that it would drown out the affirmative speech, much like we've demonstrated it would drown out our speech, and that was separate from the question of whether the government in that case could have had a smaller warning or a different warning that still got its message out. So there were two separate things. Third, burden of proof is plainly on the government here. If there's a question, as Your Honour raised, as to how people would perceive this warning, in cases that are brought that are actual false advertising cases, the party with the burden of proof has to come up with a survey, and they do have to do that. In this case, the government hasn't done that. The government says, well, different people always understand different words differently, and that's just life.  And you don't always, because some things are intrinsically misleading, Your Honour. That was cost and fees, and the Supreme Court in that case was willing to say, well, of course people would know the difference in cost and fees, and I thought to myself, really? But they specifically said we're not requiring a survey. And Your Honour, this one is even clearer, because in that case, the statement that the lawyer was made in Zadar is always factually true. In the case at hand, the statement that contributes is only true, as we've said, under certain circumstances. Of course, the burden of proof, before you leave that, is that they do bear the ultimate burden of proof, but this is your motion for a preliminary injunction. And I've thought about it. So how does that trade off? Your Honour, they have to have the burden, because in NIFLA, which was also a preliminary injunction case, the court treated the government as having the burden of proof across the board. So that's our most recent and most definitive statement on it from the Supreme Court. Go ahead. I was just going to say, when the government says it's very difficult to come up with a warning that everybody will understand, with all due respect to the government, that's the government's problem. The Supreme Court has told us that precision is the touchstone of the First Amendment. The situation here isn't the situation of the government wanting to speak. They're trying to require us to convey their message. If they're doing that, holding them to a standard that says, it better be clear, it better be forthright, it can't be one-sided, it can't be misleading, is normal. It's not exceptional under the First Amendment. Just one moment, just to clear one thing up. Under-inclusiveness is in the Zouderer part. I noticed that, although I didn't use the word under-inclusivity. Understood. I just wanted to clear that up, if I may. It's in a different context. I don't use the exact term. Lastly, if I might end on the differences between this and tobacco, because I think a lot's been made about tobacco warnings and this warning. The tobacco warning says, cigarettes cause cancer. We do think that a reasonable person understands that as a warning about an inherent risk of the problem. A consumer would say, if I smoke cigarettes, I increase my risk of getting cancer. And that's absolutely true, that they're increasing the risk of it because there is no safe level. The problem the government has here is they're requiring the very same type of warning. As their expert says, their warning says that drinking sugar-sweetened beverages leads to obesity, diabetes. No, it says contributes to. Contributes to is the words of the warning, Your Honor. At paragraph 28, their witness, Dr. Hammond, says that it conveys that it leads to. And we think that that's what it conveys. The words contributes is not better than cause because it's weaker. It's worse than cause because it's weaker, because it's more easily misunderstood. Thank you, counsel. The case just argued will be submitted for decision and will be in recess for the morning. All rise. Thank you.
judges: D.W. Nelson, Thomas, Graber, W. Fletcher, Berzon, Ikuta, Murguia, Christen, Nguyen, Hurwitz, Owens